IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-455 (RGA) |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, | ) | **REDACTED –** |
| INC., ROCKSTAR GAMES, INC. and | ) | **PUBLIC VERSION** |
| 2K SPORTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## THEIR MOTION FOR ATTORNEYS' FEES AND COSTS

OF COUNSEL:

David P. Enzminger
Michael A. Tomasulo
Gino Cheng
David K. Lin
Joe S. Netikosol
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071
(213) 615-1700

Louis L. Campbell
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA  94065
(650) 858-6500

Dan K. Webb
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

Joseph C. Masullo
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000

Original Filing Date: February 7, 2022
Redacted Filing Date: February 15, 2022

## TABLE OF CONTENTS

Page

I.    Nature and Stage of the Proceedings ........................................................... 1

II.   Summary of the Argument.......................................................................... 1

III.  Statement of the Facts................................................................................ 2

   A.   All Asserted Claims Were Decided in Take-Two's Favor at Summary
        Judgment .......................................................................................... 2

   B.   Acceleration Did Not Appeal the M-Regular Noninfringement Holding
        and Lost the Issues It Did Raise on Appeal ...................................... 2

IV.   This Was an Exceptional Case Warranting an Award of Attorneys' Fees to
      Take-Two Under 35 U.S.C. § 285................................................................ 3

   A.   Defendants Are the "Prevailing Parties".............................................. 3

   B.   Take-Two Should Be Awarded All of Its Attorneys' Fees in Defending
        This Case........................................................................................... 4

   C.   Acceleration's Substantive Litigation Positions Were Exceptionally Weak........... 5

      1.   Acceleration's infringement position for the "m-regular"
           limitation, which relied in part on falsified evidence, was
           exceptionally weak.......................................................... 5

      2.   Acceleration's DOE arguments were exceptionally weak........................ 9

      3.   Acceleration's position that the CRM claims were not ineligible
           was exceptionally weak .................................................... 9

      4.   Acceleration's standing position as to Sony PlayStation games was
           exceptionally weak.......................................................... 10

      5.   Acceleration's damages theories were exceptionally weak .................... 11

   D.   Acceleration's Litigation Conduct Was Exceptional ........................... 13

      1.   Acceleration's counsel's lack of candor............................... 13

      2.   Acceleration forced relitigation of issues it had already lost.................. 13

      3.   Conduct in other cases supports a fee award here to deter such
           conduct ...................................................................... 14

V.      It Is Necessary and Proper to Award Fees Against Acceleration Bay's Principals, Alter Egos, and Attorneys ................................................................................. 16

VI.     Alternatively, the Court Should Award Defendants Their Fees and Costs Under Its Inherent Power ........................................................................................................ 19

VII.    Conclusion ........................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acceleration Bay LLC v. 2K Sports, Inc.*,
   15 F.4th 1069 (Fed. Cir. 2021) ...................................................................1, 3

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
   324 F. Supp. 3d 470 (D. Del. 2018)........................................................ *passim*

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
   C.A. No. 16-453-RGA, 2017 WL 3668597 (D. Del. Aug. 24, 2017)...........................1, 10, 11

*Acceleration Bay LLC v. Elec. Arts Inc.*,
   No. 16-454-RGA, 2019 WL 1376036 (D. Del. Mar. 27, 2019) ...........................................14

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*,
   No. 16-455-RGA, 2020 WL 1333131 (D. Del. Mar. 23, 2020) ...................................... *passim*

*AdjustaCam, LLC v. Newegg, Inc.*,
   861 F.3d 1353 (Fed. Cir. 2017)........................................................................8

*Anderson Mfg. Inc. v. Wyers Prods. Grp., Inc.*,
   18-0235-WJM, 2019 WL 4007772 (D. Colo. Aug. 23, 2019)....................................4, 5, 6, 13

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
   269 F.3d 1369 (Fed. Cir. 2001)........................................................................8

*Bayer Cropscience AG v. Dow Agrosciences LLC*,
   No. 12-256-RMB, 2015 WL 108415 (D. Del. Jan. 5, 2015) ...................................11

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)........................................................................19

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015)........................................................................16

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)........................................................................10

*Dragon Intellectual Prop. LLC v. DISH Network LLC*,
   13-2066-RGA, 2021 WL 5177680 (D. Del. Nov. 8, 2021) ...................................17

*Eon-Net LP v. Flagstar Bancorp*,
   653 F.3d 1314 (Fed. Cir. 2011)........................................................................8

*Finjan, Inc. v. Juniper Networks, Inc.*,
　No. 17-05659-WHA, 2021 WL 3140716 (N.D. Cal. July 26, 2021)...............................13, 15

*Finjan, Inc. v. Juniper Networks, Inc.*,
　No. 17-05659-WHA, 2021 WL 75735 (N.D. Cal. Jan. 9, 2021).................................12, 13, 15

*Freshub, Inc. v. Amazon.com Inc.*,
　6:21-cv-00511-ADA, 2021 WL 5987106 (W.D. Tex. Dec. 17, 2021)...................................15

*Inland Steel Co. v. LTV Steel Co.*,
　364 F.3d 1318 (Fed. Cir. 2004)........................................................................................4

*Intamin Ltd. v. Magnetar Techs. Corp.*,
　No. 04-0511-GAF, 2009 WL 10675581 (C.D. Cal. Oct. 8, 2009) ..........................................8

*Intex Recreation Corp. v. Team Worldwide Corp.*,
　77 F. Supp. 3d 212 (D.D.C. 2015) ....................................................................................14

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
　876 F.3d 1372 (Fed. Cir. 2017)........................................................................................5

*Iris Connex, LLC v. Dell, Inc.*,
　235 F. Supp. 2d 826 (E.D. Tex. 2017)........................................................... *passim*

*Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*,
　No. 18-07661-GJS, 2019 WL 2064112 (C.D. Cal. May 23, 2019)........................................9

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
　745 F. App'x 153 (Fed. Cir. 2018) ....................................................................................4

*Machinery Corp. of America v. Gullfiber AB*,
　774 F.2d 467 (Fed. Cir. 1985)..........................................................................................18

*Midwest Athletic & Sports Alliance LLC v. Ricoh USA, Inc.*,
　No. 19-514, 2019 WL 3387061 (E.D. Pa. July 25, 2019) .................................................11, 15

*Midwest Athletic & Sports Alliance LLC v. Ricoh USA, Inc.*,
　2021 WL 1907475 (E.D. Pa. May 12, 2021) ......................................................................15

*Nelson v. Adams USA, Inc.*,
　529 U.S. 460 (2000)........................................................................................................18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
　572 U.S. 545 (2014)..........................................................................................3, 5, 8, 13

*Ohio Cellular Products Corp. v. Adams USA, Inc.*,
　175 F.3d 1343 (Fed. Cir. 1999)........................................................................................18

*Parallel Iron LLC v. NetApp, Inc.*,
    84 F. Supp. 3d 352 (D. Del. 2015) ........................................................................19

*Phonometrics, Inc. v. Hyatt Corp.*,
    89 F. App'x 738 (Fed. Cir. 2004) .........................................................................19

*Ray v. Eyster*,
    132 F.3d 152 (3rd Cir. 1997) ...............................................................................19

*Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008) ......................................................................19, 20

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) ...........................................................................16

*Wiav Sols. LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) .....................................................................10, 11

**Statutes**

28 U.S.C. § 1927 .....................................................................................................19, 20

35 U.S.C. § 101 ............................................................................................................10

35 U.S.C. § 285 ..................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 11 ...........................................................................................................4

## I.        Nature and Stage of the Proceedings

Acceleration asserted that Take-Two infringed claims from six patents (the '344, '966, '634, '147, '069, and '497 patents). 455 DI 1.[1] Take-Two has obtained complete victory on summary judgment and on appeal of all asserted claims. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 478-79, 485-87 (D. Del. 2018) ("*Activision*");[2] *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, No. 16-455-RGA, 2020 WL 1333131 (D. Del. Mar. 23, 2020) ("*Take-Two*"); *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069 (Fed. Cir. 2021) ("*Acceleration Bay*"). Defendants now move for an award of attorneys' fees, costs, and other expenses against Acceleration and its principals, alter egos, and lead counsel.

## II.       Summary of the Argument

If any case stands out from others for substantive weakness and how it was litigated, this one does. The merits of the case were exceptionally weak. As to one accused game, Acceleration's expert candidly admitted that the accused client-server network was not infringing. As to the other, not only was its infringement theory baseless, but its only evidence that the accused network was ever m-regular was a screenshot Acceleration found on YouTube, doctored to fit its infringement theory, and then gave to the experts without telling them the screenshot had been manipulated. Acceleration's equivalents arguments for the central m-regular limitation were even worse because that limitation was added by amendment. Half of its damages base was tossed for lack of standing. The Court then excluded a remarkable four sets of damages theories, leaving Acceleration with no damages case at all. Shifty positions in discovery and claim construction caused the Court to state its concern that "Plaintiff's national counsel cannot be relied upon for 'candor to the tribunal.'" In

---

[1] "455 DI" refers to the docket of this case; "453 DI" refers to the docket of *Acceleration Bay LLC v. Activision Blizzard, Inc.*, C.A. No. 16-453-RGA; and "311 DI" refers to the docket of *Acceleration Bay LLC v. Take-Two Interactive Software*, C.A. No. 15-311-RGA.

[2] All three defendants jointly moved on invalidity. *Activision*, 324 F. Supp. 3d at 475 n.1.

an ordinary patent case, **none** of these things happens. In ordinary cases, plaintiffs advance credible infringement theories and do not give their experts phony evidence. They present an admissible damage case, and the court does not question the candor of their counsel. This case stands out.

Acceleration's lead counsel made the litigation decisions and should bear their conse-quences. ████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████ and made all the myriad decisions that made this case so exceptional. Defendants respectfully ask that the Court find this case exceptional and award Take-Two its full fees against Acceleration, its principal(s), and its national counsel.

## III.    Statement of the Facts

### A.    All Asserted Claims Were Decided in Take-Two's Favor at Summary Judg-ment

All claims not already found invalid in the *Activision* case were disposed of in *Take-Two* by one of three rulings. First, the Court reiterated that making and selling video games is not mak-ing or selling the asserted '344, '966, and '497 patent claims. *Take-Two* at *4-5. This holding was identical to those the Court had already reached in the Activision and EA cases. *Id.* Second, the Court held that Acceleration presented insufficient evidence that Take-Two had tested the accused games in the accused modes and therefore Take-Two could not be found to "use" the claims of the '344, '966, and '497 patents either. *Id.* at *5-7. Third, the Court held that Take-Two did not infringe the '344, '966, '069, and '147 patents either literally or by equivalents because the accused games did not meet the "m-regular" claim limitations. *Id.* at *7-10.

### B.    Acceleration Did Not Appeal the M-Regular Noninfringement Holding and Lost the Issues It Did Raise on Appeal

Acceleration did not appeal the central issue in this case: this Court's judgment that the accused Take-Two networks are not m-regular. Instead, it appealed the holding that Take-Two did

not infringe the '344, '966, and '497 patents by making, selling, or offering to sell and the Court's construction that the '069 claims contain an "m-regular" limitation. *Acceleration Bay*, 15 F.4th at 1075-78. All but one issue was rejected as moot. The appeal as to the '344 and '966 patents was found moot because Acceleration did not appeal the m-regular holding, an independent ground for noninfringement. *Id.* at 1076-77. Acceleration's appeal of the construction of the '069 patent was found moot because Acceleration failed to challenge both relevant constructions. *Id.* at 1077-78. As to the '497 patent, the Federal Circuit affirmed that making and selling video game software does not make or sell the hardware component of the asserted '497 patent claims. *Id.*

## IV.   This Was an Exceptional Case Warranting an Award of Attorneys' Fees to Take-Two Under 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case "is one that stands out from others with respect to the substantive strength of a party's litigation position" or "the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* A district court may consider a "non-exclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness" and the "need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. The exceptional-case inquiry "imposes no specific evidentiary burden, much less such a high one." *Octane Fitness*, 572 U.S. at 557. A party must only show a fee award is warranted by a preponderance of the evidence. *See id.*

### A.   Defendants Are the "Prevailing Parties"

Take-Two is a "prevailing party" because it obtained a complete victory at summary judgment. *See Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004).

**B.     Take-Two Should Be Awarded All of Its Attorneys' Fees in Defending This Case**

The Court may award attorneys' fees for the entire litigation when the factual bases for the exceptional-case finding "permeate[] the entire litigation." *See Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 745 F. App'x 153 (Fed. Cir. 2018). That is the case here. As explained below, Acceleration took baseless positions on every issue in this case, including infringement, standing, damages, discovery, and claim construction. It relitigated issues it had already lost and failed in its obligation of candor to the tribunal. The case was baseless from the beginning. Take-Two wrote a "Rule 11" letter to Acceleration immediately because, even after spending dozens of hours reviewing Take-Two's source code, Acceleration's infringement contentions included ***no evidence at all*** for the m-regular limitations. Ex. A at 4-6; Ex. O (excerpts of Acceleration's March 2016 infringement contentions). As the Court observed, a network with a central server is "fundamentally different" than the claimed network. *Take-Two* at *10. In fact, a network with a central server can never be m-regular and incomplete as the claims require. It is mathematically impossible. The baselessness of Acceleration's infringement theories was the subject of special master orders across all three cases. *See, e.g.*, 311 DI 125; 453 DI 155, at 6-7; 455 DI 150, at 6; 455 DI 272, at 3-4.

An award of full attorneys' fees is, thus, appropriate here. Indeed, in a case with strikingly similar facts, the court awarded the defendants all their attorneys' fees. *See Anderson Mfg. Inc. v. Wyers Prods. Grp., Inc.*, 18-0235-WJM, 2019 WL 4007772, at *12 (D. Colo. Aug. 23, 2019) (awarding full attorneys' fees based on "a number of objectively weak arguments … , one instance of probably falsified evidence, a pattern of exaggerating matters of record, and a lack of candor to the Court"). Thus, Take-Two requests that this Court award it all of the approximately $9 million in attorneys' fees and costs it incurred from when the case was filed in 2015 through the end of the

4

Federal Circuit appeal.[3] Take-Two will submit whatever evidence the Court requires to verify these billings.

### C.      Acceleration's Substantive Litigation Positions Were Exceptionally Weak

The substantive weakness of Acceleration's substantive positions "stands out from others." *Octane Fitness*, 572 U.S. at 554. Five examples highlight how the substantive weakness of Acceleration's positions permeated this entire case: (1) Acceleration's literal infringement position for the "m-regular" claim limitation, (2) Acceleration's assertion of infringement by equivalents, (3) Acceleration's argument that the "computer readable medium claims" were invalid after Acceleration admitted they were not, (4) Acceleration's position that it had standing to accuse games designed for the Sony PlayStation, and (5) Acceleration's multiple failures to present an admissible damages theory. Each independently supports an exceptional-case finding.

#### 1.      Acceleration's infringement position for the "m-regular" limitation, which relied in part on falsified evidence, was exceptionally weak

All of Acceleration's infringement arguments lacked merit, but its arguments that the accused video games utilized an m-regular network were particularly egregious. *See Take-Two* at *7-10. Amplifying the unreasonableness of these positions is that, for GTAO, its experts relied in their reports on falsified screenshots that neither expert could authenticate and that, for NBA 2K, its expert admitted that the accused network was not m-regular.

For GTAO, Acceleration argued players in the virtual world become "connected" when they are near each other because more data is transmitted between players who are closer together in that world. *Id.* at *7. Acceleration then argued that GTAO met the m-regular limitation because,

---

[3] Attorneys' fees for appeals may be awarded under Section 285. *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1380 (Fed. Cir. 2017).

when players positioned their avatars in the virtual world in just the right way, these alleged "connections" would supposedly "naturally" form an m-regular network. *Id.*

The Court resoundingly rejected Acceleration's infringement theory. *Id.* at *8. It observed that the "players control their own avatars and choose where to move throughout the game environment." Thus, the fact that "players share more data when they are near each other does not suggest that the network is m-regular" but instead "suggests that the players' actions determine how connections are formed, and the network is not 'configured to maintain' any particular state." *Id.*

Not only was the theory baseless, but Acceleration could find no evidence that such an m-regular network had ever actually occurred. Therefore, Acceleration took a screenshot from a gameplay video it found on YouTube, doctored the screenshot to support its infringement theory, and gave it to its experts to include in their reports. 455 DI 463, at 16-22; 455 DI 464, Ex. A-2 (Mitz Rpt.) ¶ 129; 455 DI 464, Ex. A-1 (Med. Rpt.) ¶ 173. The screenshot purportedly shows a game where six players are each connected to exactly three other players, ostensibly making the network 3-regular. *Id*. And while their reports state the image was "modified," both experts testified that the *only* modifications were the red lines and blue, yellow, and green circles and squares that overlay the actual image. Ex. P (Med. Tr.) at 123:12–127:16; Ex. Q (Mitz. Tr.) at 58:2-10. Neither knew that the underlying image itself had been modified. *Id*.

But the experts were wrong. Acceleration altered the underlying image, almost certainly because the original does not support the infringement theory. In the original, players 2–6 do not appear at all:

**Frame of original YouTube video**



**Acceleration's doctored Image**



But adding the fictitious players was not the only alteration. As can be seen below, the lower-left corner includes a "mini-map" that indicates the locations of other players in the virtual world. 455 DI 463, at 19-21. Acceleration altered the mini-map to suggest that players were arranged in the allegedly infringing formation indicated by the overlay. *Id.*

**Enlarged view of original mini-map**



**Enlarged view of doctored mini-map**



As can be seen, Acceleration altered the original screenshot by copying the center red and blue icon and pasting it four times so that the mini-map would falsely indicate that the screenshot included players 2, 4, 5, and 6 arranged in the allegedly infringing manner. Acceleration also removed the two blue dots in the lower-left corner of the mini-map, presumably because those players did not fit the theory of infringement. Acceleration gave the doctored screenshot to its experts but did not tell them that the screenshot was altered. The experts did not take any screenshots, did

not know that it had been altered, and suggested it had probably come from counsel. 455 DI 464, Ex. E-5 (Mitz. Tr.) at 56:23–57:8, 65:7-14; 455 DI 464, Ex. E-6 (Med. Tr.) at 36:24–37:1, 132:24–133:9.

For NBA 2K, Acceleration's infringement theory was similarly baseless. NBA 2K uses a client-server network. *Take-Two* at \*9-10. Acceleration's expert report stated that both the player clients and the "park-relay" server were network participants. *Id.* at \*9. But if the server is a participant, then the network is not m-regular because the server is connected to all the other participants, but each client is not. *Id.* This is why, as the Court observed, a client-server network is "fundamentally different" from the claimed m-regular network. *Id.* at \*10. Acceleration's expert candidly admitted that the accused client-server network was non-infringing. 455 DI 463, at 27-28. Instead of withdrawing its literal-infringement claim, Acceleration changed theories and argued that the server was ***not a network participant***. *Take-Two* at \*9. The Court found that this unsupported attorney argument contradicted the expert and found no literal infringement. *Id.*

Baseless infringement theories such as these routinely form the basis for exceptional-case findings. For example, even before *Octane Fitness*, the Federal Circuit had affirmed exceptional-case findings for baseless infringement cases. *See, e.g.*, *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011); *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353 (Fed. Cir. 2017). And of course, presenting falsified evidence makes a case exceptional. *See, e.g.*, *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1372-75 (Fed. Cir. 2001); *Intamin Ltd. v. Magnetar Techs. Corp.*, No. 04-0511-GAF, 2009 WL 10675581 (C.D. Cal. Oct. 8, 2009) (finding case exceptional based on the patentee's forged chain of title). Moreover, there is no requirement that the patentee affirmatively rely on the doctored evidence at trial or in rebutting a summary-judgment motion. *See Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*, No. 18-07661-GJS, 2019

WL 2064112 (C.D. Cal. May 23, 2019) (finding case exceptional based on doctored claim chart that the patentee sent as part of a pre-suit licensing demand).

### 2.    Acceleration's DOE arguments were exceptionally weak.

Acceleration's doctrine-of-equivalents infringement theories were even worse. For GTAO, the Court noted that the theory makes "no mention of participants connecting to the same number of other participants." For NBA 2K, it found that "the architecture of the NBA 2K network, which relies on a central relay server, is ***fundamentally different*** from the m-regular networks of the asserted claims." *Take-Two* at *10 (emphasis added). And for the three patents where applicants added "m-regular" to the claims to avoid prior art, the Court held Acceleration's equivalents argument was "especially weak" because of prosecution-history estoppel. *Id.* at *9. Acceleration was advised early and often about these deficiencies. Ex. A at 4-6; Ex. B at 15-21; 24.

### 3.    Acceleration's position that the CRM claims were not ineligible was exceptionally weak

The Court construed the asserted "computer readable media" claims to include "carrier waves." *See* 455 DI 345, at 7. At the claim construction hearing, Acceleration agreed that if the Court adopted this construction, it would make the claims patent ineligible: "THE COURT: Do you agree [if] this includes fleeting medium such as carrier waves, that the claims are ineligible? [PLAINTIFF COUNSEL]: The short answer is yes." 453 DI 363, at 62:24–65:1. Despite this, Acceleration refused to stipulate that the claims were ineligible, forcing defendants to move for summary judgment. Ex. C. The opposition to the summary judgment was exceptionally weak. Acceleration argued that the Court should ignore the preamble and treat these "as *method* claims for the purposes of a § 101 analysis." 453 DI 475, at 32 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011)). *CyberSource* had nothing to do with carrier waves and, as the Court found, rejected Acceleration's argument: "'[r]egardless of what statutory category … a

claim's language is crafted in,' the Court must evaluate the underlying invention for patent eligibility." *Acceleration*, 324 F. Supp. 3d at 485-86. Thus, the Court rejected Acceleration's argument and found the claims invalid because they were construed to cover fleeting media. This was the very same holding Acceleration had agreed with at the claim construction hearing. *Id.*

### 4.     Acceleration's standing position as to Sony PlayStation games was exceptionally weak

To more than double the accused royalty base, Acceleration accused games operating on the Sony PlayStation platform despite a plain lack of constitutional standing to do so. The Sony PlayStation version of the accused games constitutes at least half the market. Ex. M (Excerpts of Lawton Report) ¶¶ 115-128. But, years before Acceleration existed, Sony obtained a license to the asserted patents from Boeing covering video games designed for the Sony PlayStation platform. The Sony license granted Sony the right to grant sublicenses to third-party game developers and publishers within a field of use that plainly included the accused games. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-453, 2017 WL 3668597 ("*Standing Order*") at *1. It is blackletter law that "a [plaintiff] lacks standing to sue a party who has the ability to obtain … a license from another party with the right to grant it." *Wiav Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266-67 (Fed. Cir. 2010); *see also Standing Order* at *2 (applying *Wiav* to this case). That was precisely the situation with the Sony license. But Acceleration still asserted it had standing to seek damages for accused games on the Sony PlayStation platform. *See* 455 DI 1-3, at 2, 65. In response, Acceleration argued that the *Wiav* rule was "dicta." *Standing Order* at *3. The Court rejected that argument and granted Take-Two's motion to dismiss the claims related to the Sony PlayStation video games. *Id.* at *3-4.

Pursuing infringement claims with an obvious lack of standing can support a fee award. In *Bayer Cropscience AG v. Dow Agrosciences LLC*, the court awarded fees where a prior license

precluded an infringement finding and the plaintiff "knew or should have known that its patent claim was undercut by the plain and unambiguous language in these agreements." No. 12-256-RMB, 2015 WL 108415, at *6 (D. Del. Jan. 5, 2015). In *Midwest Athletic & Sports Alliance LLC v. Ricoh USA, Inc.*, the court awarded fees where the patentee lacked standing to assert patent infringement. No. 19-514, 2019 WL 3387061 (E.D. Pa. July 25, 2019). In awarding sanctions, the court noted that "[defendant] first brought the issue … to [patentee]'s attention over nine months ago." *Id.* at *3. These cases are both pertinent here. Acceleration's lack of standing was obvious, as confirmed by blackletter law from the Federal Circuit, and Acceleration had ample time to withdraw these claims because the issue was fully briefed in the first set of Acceleration cases. *See* 311 DI 91. Acceleration's long-term awareness of an obvious lack of standing provides yet another reason to qualify this case as exceptional.

### 5. Acceleration's damages theories were exceptionally weak

This Court rejected Acceleration's damages theories a remarkable four times, leaving it with no damages case at all. *Activision*, 324 F. Supp. 3d at 488-91; 453 DI 600, 619, 692. The rulings in the Activision case apply with equal force to the theories in this case because the expert reports advanced the same inadmissible theories and because Acceleration stipulated to that effect. *Compare* 453 DI 444, Ex. C-3, *with* Ex. D; DI 448, 455. For instance, in both cases:

- Dr. Meyer used the date Acceleration first sued Defendants as the hypothetical negotiation date ("HND"). *Compare* 453 DI 444, Ex. C-3 ¶¶ 45-46, *with* Ex. D ¶¶ 45-46.[4] The Court excluded this approach. DI 440, at 26.

---

[4] Here, again, Acceleration knew that its date was improper and would lead to exclusion of its report, but proceeded anyway. When Defendants first moved to compel, Acceleration stated it needed "testing and development" discovery to identify the HND. 455 DI 125, at 8-9. Instead of responding based on testing and development discovery, Acceleration's compelled responses state that the HND was the date this case was first filed. This led to a motion to preclude Acceleration from changing this date, which specifically advised that "as a result of this requested preclusion, Plaintiff may not have a damages theory." Ex. E. In denying that motion, the Special Master stated

- Dr. Meyer offered an identical reasonable royalty based on a jury verdict between entirely unrelated parties on an unrelated patent. *Compare* 453 DI 444, Ex. C-3 ¶¶ 92-93, 144-149, *with* Ex. D ¶¶ 108-110, 119-124. The Court rejected this argument, too. DI 440, at 27-28.

- Dr. Valerdi offered a so-called "cost-savings" opinion regarding the cost of a potential non-infringing alternative that, according to Acceleration, did not exist. *Compare* 453 DI 444, Ex. C-2, at 3, 12-13, *with* Ex. N at 3, 12-13; *see also* Ex. D ¶¶ 54-57 (relying on Valerdi). The Court excluded this approach as well, finding it "entirely speculative, untestable, and divorced from the facts of this case." 453 DI 692, at 7.

- To avoid the low-cost Boeing/Sony license, Dr. Meyer opined that when "the parties entered into the agreement Boeing did not consider that PlayStation gaming systems would be covered under the Sony License." *Compare* 453 DI 444, Ex. C-3 ¶¶ 61-67, *with* Ex. D ¶¶ 61-67. This argument was excluded, with the Court noting the "Boeing/Sony License expressly says it covers the accused products." 455 DI 440, at 28.

In the Activision case, the Court again excluded Acceleration's damages theories. First, the Court excluded Acceleration's "fact-based" damages theory where it offered lay testimony to support a 15.5% royalty. 453 DI 600. Then, the Court excluded all seven theories in Acceleration's "final" chance, leaving Acceleration with no damages case at all. 453 DI 692.

This very same conduct was recently found to support a fee award. *Finjan, Inc. v. Juniper Networks, Inc.*, No. 17-05659-WHA, 2021 WL 75735, at *1 (N.D. Cal. Jan. 9, 2021) ("*Finjan I*"). There, as here, after the patentee's damages expert was excluded, the patentee's fallback was a "facts-only damages case." *Id.* That, too, was excluded as "woefully inadequate." *Id.* at *2. This left the plaintiff with no damages case, just as this Court's rulings in Activision did here. In awarding fees against the plaintiff, Judge Alsup called the damages case a "fiasco that wasted a great deal of everyone's time and energy." *Id.* This led the court to find that the entire assertion of that patent "stood out as exceptional." *Id.* The court ultimately granted nearly $6 million in attorneys'

---

Acceleration would be "bound" by its discovery response "that the date of hypothetical negotiation was the date of service of the complaints in the 2015 filed cases." 455 DI 194, at 7-8.

fees. *Finjan, Inc. v. Juniper Networks, Inc.*, No. 17-05659-WHA, 2021 WL 3140716, at \*4 (N.D. Cal. July 26, 2021) ("*Finjan II*"). This case is exceptional for the same reasons.

### D.     Acceleration's Litigation Conduct Was Exceptional

Fees are also warranted here because this case "stands out from others with respect to … the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.

#### 1.     Acceleration's counsel's lack of candor

Acceleration's shifting positions caused the Court to note that it was "concerned that Plaintiff's national counsel cannot be relied upon for 'candor to the tribunal.'" 453 DI 422. The Court cited two incidents to demonstrate its point. *Id.* These incidents showcase Acceleration's willingness to say whatever was necessary to win, something other courts have relied on to find a case exceptional. *Anderson Mfg. Inc.*, 2019 WL 4007772, at \*11-12 (D. Colo. Aug. 23, 2019) (exceptional-case finding where the plaintiff's conduct suggested a "willingness to say whatever is needed to obtain the outcome it seeks").

#### 2.     Acceleration forced relitigation of issues it had already lost

Acceleration multiplied the proceedings, and the burden to the Court and Defendants, by routinely forcing additional motions and briefing on issues it had already lost even after Acceleration was warned for its lack of candor.

The invalidity of the computer-readable-medium claims is a powerful example. During a *Markman* hearing, Acceleration's counsel acknowledged that the computer-readable-medium claims would be invalid if they were construed to cover fleeting media. *See* 453 DI 363, at 64:20–65:1. Yet after the Court construed those claims to cover fleeting media, 455 DI 345, at 7-9, Acceleration refused to stipulate that the claims were invalid, requiring Defendants to include that issue in their summary-judgment motion. *See Acceleration*, 324 F. Supp. 3d at 485-86. Another example is the motion to "correct" the preamble of claim 19 of the '634 patent after losing its

construction, discussed above. Here, again, Acceleration refused to stipulate that losing its motion to correct the preamble made the claim invalid, requiring Defendants to include this issue in their summary-judgment motion. *See id.* at 478-79 (noting that claim could not be corrected because plaintiff itself had advanced three materially different claim constructions). As another example, Acceleration declined multiple requests by Take-Two to streamline the briefing regarding whether the manufacture and sale of video game software constituted making, selling, or offering to sell the claimed "networks," "broadcast channels," and "components." 455 DI 464, Ex. F-11. Even though the only issue unique to each Defendant was alleged infringement by internal testing, Acceleration forced full briefing on the entire set of issues in each case. *See Activision*, 324 F. Supp. 3d at 479-82, 484-85; *Acceleration Bay LLC v. Elec. Arts Inc.*, No. 16-454-RGA, 2019 WL 1376036, at *4-5 (D. Del. Mar. 27, 2019); *Take-Two* at *4-5.

Yet another example is that Acceleration's appeals of the Special Master's discovery orders. The Court denied in full four of those five objections (455 DI 158, 253, 262, and 397) and denied-in-part the fifth. (455 DI 254).

Multiplying proceedings in this way has been a basis for exceptional-case findings. *See, e.g.*, *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (fees available "under Section 285 where a party advances arguments that … seek only to re-litigate issues the court has already decided").

### 3.     Conduct in other cases supports a fee award here to deter such conduct

Lastly, Take-Two notes that in considering the totality of the circumstances, a court may consider positions and conduct of the litigants or related persons or entities in other cases, particularly for the goal of deterring future similar conduct. *See Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 2d 826, 850 (E.D. Tex. 2017). Doing so here supports a finding that this case is exceptional and furthers the Supreme Court's stated goal of deterrence. Not only did this Court

14

admonish Plaintiff's national counsel, 453 DI 422, but three others have recently issued sanctions against Plaintiff's national counsel for conduct sufficiently like the conduct at issue in this case to be relevant. Judge Alsup awarded fees for, among other things, proffering inadmissible damages theories and then attempting to pursue a "fact based" damages theory. Although the $5.9 million fee award did not extend to counsel, Judge Alsup personally named the attorneys leading this case and stated "[t]heir conduct was improper and frustrated the fairness of the proceedings" and advised that "Judges in the future should take [their conduct in *Finjan*] into account when dealing with them in future cases." *Finjan II*, 2021 WL 3140716, at *4. Judge Wolson in the Eastern District of Pennsylvania issued sanctions, twice: first for asserting infringement in a case where the plaintiff lacked standing to assert patents and then for changing infringement theories after the close of fact discovery. *See Midwest Athletic & Sports Alliance*, 2019 WL 3387061 (standing); *Midwest Athletic & Sports Alliance LLC v. Ricoh USA, Inc*, 2021 WL 1907475 (E.D. Pa. May 12, 2021) (contentions) ("[T]he Court questions how MASA and its attorneys could have thought that such conduct fell within expected standards of practice."). The lawyers themselves were very recently sanctioned by Judge Albright for making baseless allegations that Amazon's counsel made anti-Semitic comments at trial. *Freshub, Inc. v. Amazon.com Inc.*, 6:21-cv-00511-ADA, 2021 WL 5987106, at *5 (W.D. Tex. Dec. 17, 2021). Collectively, these cases show a willingness to repeatedly take unreasonable positions without regard for the facts, the law, or their obligations to the tribunal. Because that same conduct is at issue here, Take-Two respectively submits that the sanctions issued by these other courts are relevant and support a finding that this case is exceptional and to deter such conduct going forward. *See Iris Connex,* 235 F. Supp. 2d at 845, 850.

## V.   It Is Necessary and Proper to Award Fees Against Acceleration Bay's Principals, Alter Egos, and Attorneys

The Supreme Court has held that "it is still necessary and proper to stress that district courts have the authority and responsibility to ensure frivolous cases are dissuaded." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 647 (2015). As necessary and proper as it is to award attorneys' fees in this exceptional case, it would all be for naught if the only one required to pay those fees were the Acceleration entity, which is almost certainly insolvent. ██████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████ Despite holding itself out as an "incubator," there is no evidence that Acceleration Bay has ever "incubated" anything except lawsuits. ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ Given the effort expended by Acceleration's counsel in the intervening years, all that money has certainly been spent. Thus, Take-Two requests that the Court award fees against those responsible for these exceptional cases: the principals and alter egos of Acceleration and Acceleration's national counsel.[5]

Here, Acceleration's attorneys and principal are alter egos of Acceleration. Acceleration's counsel masterminded the litigation. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[5] There is no doubt that the Court has the power to apply exceptional-case sanctions to alter egos of a sanctioned party. For example, in *Taurus IP, LLC v. DaimlerChrysler Corp.*, the Federal Circuit affirmed an award of attorneys' fees under Section 285 against the plaintiff and its corporate alter ego. 726 F.3d 1306, 1344 n.21 (Fed. Cir. 2013) ("This ruling does not affect the award … under 35 U.S.C. § 285 … against Taurus [plaintiff] and Orion [alter ego].")

 Accel-

eration's counsel should not be allowed to

evade any meaningful monetary sanction.

In addition to the alter ego basis, Take-Two submits that § 285 itself supports a fee award awarded against counsel for the sanctioned party. Take-Two is aware of this Court's recent decision reaching a contrary holding. *Dragon Intellectual Prop. LLC v. DISH Network LLC*, 13-2066-RGA, 2021 WL 5177680 (D. Del. Nov. 8, 2021). But Take-Two respectfully suggests that *Dragon* was incorrectly decided and requests that the Court reconsider the issue here. In particular, Take-Two cites a decision from another district that awarded § 285 attorneys' fees against an attorney: *Iris Connex LLC v. Dell, Inc.*, 235 F. Supp. 2d 826 (E.D. Tex. 2017).

*Iris Connex* synthesized the text of the patent statute, prior decisions, and congressional intent to arrive at a three-part test that awards joint and several § 285 liability against nonparties, including attorneys, if "(1) the actor is responsible for conduct that makes the case exceptional, (2) the actor is afforded due process, and (3) it is equitable to do so." *Id.* at 852. This test is consistent with the statute, the case law, and congressional intent. *Id.* at 843-46.

The *Iris Connex* test is consistent with the text of the statute, which provides that "[t]he Court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The only requirement for awarding fees is that the case be exceptional. There is no limitation

on who may be ordered to pay them. The *Iris Connex* test is also consistent with appellate court decisions on this topic. In addition to the *Taurus* decision discussed above, there are at least two other cases confirming that § 285 sanctions may be awarded against nonparties. In *Ohio Cellular Products Corp. v. Adams USA, Inc.*, the Federal Circuit affirmed an award of § 285 attorneys' fees against the inventor and sole shareholder of the plaintiff. 175 F.3d 1343 (Fed. Cir. 1999). That decision was reversed by the Supreme Court on procedural grounds, but the substantive holding remained intact. *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000). In *Machinery Corp. of America v. Gullfiber AB*, the Federal Circuit opined that § 285 attorneys' fees may be awarded against an agent of a party if the agent is responsible for the acts rendering the case exceptional. 774 F.2d 467, 475 (Fed. Cir. 1985). Although only *Iris Connex* has awarded fees against a party's *attorneys*, there is nothing in *Taurus*, *Ohio Cellular*, or *Machinery Corp.* that would support a special distinction for attorneys. This is especially so because it is the attorneys who were responsible for presenting weak litigation arguments and conducting the litigation.

The *Iris Connex* test is also consistent with congressional intent. The patent statute codified prior jurisprudence and "is based on the premise that courts should attempt to strike a balance between the interest of the patentee[s] in protecting [their] statutory rights and the interest of the public in confining such rights to their legal limits." *Mach. Corp.*, 774 F.2d at 471. As the *Iris Connex* court aptly recognized, if the "risk [of a fee award] can be side-stepped by use of an empty shell to front for the real actor, simply because the real actor was not originally named as the plaintiff, then Section 285 means nothing." *Iris Connex*, 235 F. Supp. 2d at 845.

For these reasons, Take Two urges the Court to adopt the *Iris Connex* test for awarding § 285 attorneys' fees against nonparties. In this case, an award of attorneys' fees against Acceleration's attorneys passes the *Iris Connex* test. First, Acceleration's attorneys were the actors

responsible for the conduct that made the case exceptional. Second, Acceleration's attorneys are afforded due process because they have an opportunity to oppose this Motion. And third, it is equitable to award fees against Acceleration's attorneys. The same is true for its CEO and sole shareholder, Joe Ward.

## VI. Alternatively, the Court Should Award Defendants Their Fees and Costs Under Its Inherent Power

Even if the Court holds that sanctions may not be awarded against Acceleration's attorneys or Mr. Ward under § 285, it may do so under its inherent power to award fees against any attorney who "unreasonably and vexatiously" "multiplies the proceedings." 28 U.S.C. § 1927; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) ("[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."). This remedy serves "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 46; *see also Ray v. Eyster*, 132 F.3d 152, 156 (3rd Cir. 1997) ("The Supreme Court has recognized the inherent power of courts to impose sanctions in order to manage their own affairs and achieve orderly and expeditious disposition of cases."). The Federal Circuit has recognized that the same conduct that may justify an award of attorneys' fees under § 285 also justifies an award under 28 U.S.C. § 1927. *Phonometrics, Inc. v. Hyatt Corp.*, 89 F. App'x 738, 739 (Fed. Cir. 2004); *see also Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 356 (D. Del. 2015) ("In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules."

For example, in *Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*, the Federal Circuit affirmed judgment awarding attorney's fees, expenses, and expert fees totaling

$16,800,000 under the court's inherent power to impose sanctions. 549 F.3d 1381 (Fed. Cir. 2008). The Federal Circuit affirmed the district court's finding that the sanctioned party made "baseless" assertions in its filings because of "undisputed evidence" in the record, and also that the sanctioned party "abandoned these arguments at trial because they were unsupportable[.]" *Id*. at 1387. The Federal Circuit also highlighted a pattern of litigation misconduct, including the sanctioned party's "constantly shifting, but always baseless . . . arguments," attempts to mislead the court, and irrelevant assertions that unnecessarily prolonged and burdened the litigation. *Id*. The Federal Circuit awarded the full costs of the litigation, noting that the district court has wide discretion to do so based on how "severely a party's misconduct has affected the litigation." *Id*. at 1390-91.

The weakness of Acceleration's arguments and its vexatious litigation tactics in this case are closely analogous to the facts in *Takeda*. Acceleration and its attorneys have made "constantly shifting, but always baseless" arguments. Like in Takeda, Acceleration's actions have "created confusion, wasted valuable court time, and increased the burden of the litigation on the parties." *Id*. at 1387. Furthermore, like in *Takeda*, Acceleration's case included manipulated evidence. Acceleration's baseless clams and shifting litigation tactics have severely burdened the resources of the litigants and the Court. Thus, Take-Two requests its full fees and costs be awarded under 28 U.S.C. § 1927 against Acceleration's principal and national counsel.

## VII.   Conclusion

For the foregoing reasons, Take-Two respectfully asks that the Court grant its Motion in its entirety, find that this case is exceptional, and order that Acceleration and its principal(s) and national counsel pay Take-Two its full fees and costs under § 285 as well as this Court's inherent authority.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
cclark@morrisnichols.com

OF COUNSEL:

David P. Enzminger
Michael A. Tomasulo
Gino Cheng
David K. Lin
Joe S. Netikosol
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071
(213) 615-1700

Louis L. Campbell
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA  94065
(650) 858-6500

Dan K. Webb
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

Joseph C. Masullo
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000

*Attorneys for Defendants*

February 7, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2022, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on

February 7, 2022, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                          *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Paul J. Andre, Esquire                                            *VIA ELECTRONIC MAIL*
Lisa Kobialka, Esquire
James R. Hannah, Esquire
Hannah Lee, Esquire
Yuridia Caire, Esquire
Greg Proctor, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
*Attorneys for Plaintiff*

Aaron M. Frankel, Esquire                                        *VIA ELECTRONIC MAIL*
Marcus A. Colucci, Esquire
Cristina Martinez, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
*Attorneys for Plaintiff*

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)