## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-455 (RGA) |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, | ) | **PUBLIC VERSION** |
| INC., ROCKSTAR GAMES, INC., and 2K | ) | |
| SPORTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ACCELERATION BAY'S OPPOSITION TO
## TAKE-TWO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Aaron M. Frankel
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: March 10, 2022
Public version dated: March 17, 2022

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff*
*Acceleration Bay LLC*

## **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ................................................................................... 1

I.    This Case is Not Exceptional ....................................................................... 2

    A.    Take-Two's Reckless Claim That Acceleration Bay "Falsified Evidence" is Completely Unsupported........................................................................ 2

    B.    Acceleration Bay Provided a Detailed Infringement Analysis .............................. 7

    C.    Acceleration Bay's Positions Were Reasonable ..................................... 11

    D.    Alleged Actions in Other Cases Do Not Make Acceleration Bay's Litigation Conduct in This Case Exceptional ........................................... 14

II.   There is No Basis to Award Fees Against Acceleration Bay's Principal ........................ 16

III.  Fees Under 35 U.S.C. § 285 Are Not Available Against Counsel ................................. 16

IV.   Acceleration Bay Did Not Multiply These Proceedings.................................... 19

CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acceleration Bay v. Activision Blizzard, Inc.,*
No. 16-cv-00453-RGA, D.I. 192 (D. Del. June 23, 2017)......................................................7

*Aptix Corp. v. Quickturn Design Sys,*
269 F.3d 1369 (Fed. Cir. 2001)............................................................................................6

*Baker Indus., Inc. v. Cerberus Ltd.,*
764 F.2d 204, 208 (3d Cir. 1985)........................................................................................20

*Dashner v. Riedy,*
197 F. App'x 127 (3d Cir. 2006) .........................................................................................20

*Dragon Intell. Prop., LLC v. Dish Network L.L.C.,*
No. 1:13-cv-02067-RGA, 2021 WL 5177680 (D. Del. Nov. 8, 2021) ..........................17, 18

*Dragon Intell. Prop., LLC v. DISH Network, LLC,*
No. 1:13-cv-02066-RGA, 2018 WL 5818533 (D. Del. Nov. 7, 2018),
*vacated and remanded,* 956 F.3d 1358 (Fed. Cir. 2020) ......................................................19

*EON Corp. IP Holdings, LLC v. Flo TV Inc.,*
No. 10-812-RGA, 2014 WL 2196418 (D. Del. May. 27, 2014)..............................................8

*Grider v. Keystone Health Plan Cent., Inc.,*
580 F.3d 119 (3d Cir 2009) ................................................................................................19

*Hackman v. Valley Fair,*
932 F.2d 239 (3d Cir. 1991)...........................................................................................19, 20

*Indivior Inc. v. Dr. Reddy's Labs. S.A.,*
No. 14-cv-1451-RGA, 2020 WL 1955433 (D. Del. Apr. 23, 2020)................................11, 14

*Iris Connex LLC v. Dell, Inc.,*
235 F. Supp. 3d 826 (E.D. Tex. 2017)................................................................................18

*LaSalle Nat. Bank v. First Conn. Holding Grp., LLC.,*
287 F.3d 279 (3d Cir. 2002)...............................................................................................19

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.,*
No. 07-127-LPS-MPT, 2015 WL 4455606 (D. Del. July 21, 2015) .......................................8

*Morgan v. Covington Twp.,*
563 F. App'x 896 (3d Cir. 2014) ........................................................................................20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014).................................................................................................1, 11

*In re Sunstates Corp. S'holder Litig.*,
   788 A.2d 530 (Del. Ch. 2001)............................................................................16

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*,
   No. 16-581-RGA-MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017)......................16

**Statutes**

28 U.S.C. § 1927...................................................................................................19, 20

35 U.S.C. § 101...................................................................................................11, 12

35 U.S.C. § 285.......................................................................................... *passim*

## SUMMARY OF ARGUMENT

Take Two's motion for attorneys' fees and costs (D.I. 521 "Motion") should be denied because Acceleration Bay's prosecution of this case was not exceptional.  The case was hard-fought and involved complex technology that resulted in numerous disputed legal, factual, and expert issues, many of which were decided in Acceleration Bay's favor.  Take Two fails to demonstrate that this is "the rare case in which a parties unreasonable conduct . . . is . . . so 'exceptional' as to justify an award of fees," and instead relies on baseless *ad hominem* attacks that grossly distort the record and on findings in other cases that are irrelevant here.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014).

Take Two's primary argument completely distorts what was actually disclosed in Acceleration Bay's expert reports.  Take Two points to a single screenshot that Acceleration Bay's technical experts stated in their reports had been "modified" to "illustrate" their infringement opinions.  Both experts explained that the annotated image was only being used for demonstrative purposes—to graphically illustrate the concept of the underlying connections between participants, which are not displayed in the game—and was not to be relied upon as evidence.  Indeed, Take-Two's counsel acknowledged during a deposition that the image was "to *illustrate* your testimony *as opposed to evidence* that it actually happened."  Declaration of Aaron Frankel ("Frankel Decl.") filed herewith, Ex. 1 (Mitzenmacher Tr.) at 66:5-7 (emphasis added).  Thus, Take Two recognized long ago that this image was illustrative and not evidence, but nonetheless argues now that this demonstrative is "evidence."  Take Two's reliance on an easily disproven claim as its lead argument confirms the meritless nature of its Motion.

Take Two's remaining arguments rely on garden-variety litigation events, such as the invalidation of a handful of claims from the much larger set of claims that Acceleration Bay

asserted.  Take Two ignores that Acceleration Bay's patent claims emerged largely unscathed from the gauntlet of 20 petitions for *inter partes* review ("IPR") filed by Take Two and defendants in related cases.  Acceleration Bay's success in defeating these and other challenges to validity, claim construction, and infringement confirms that its pursuit of this case was reasonable, and far from exceptionally weak.  Thus, Take Two's motion should be denied.

## I.     This Case is Not Exceptional

### A.      Take-Two's Reckless Claim That Acceleration Bay "Falsified Evidence" is Completely Unsupported

Acceleration Bay's two infringement experts, Drs. Medvidović and Mitzenmacher, both opined that Take-Two's Grand Theft Auto V Online game ("GTA") use m-regular networks, *inter alia*, because "[w]hen the players are geographically dispersed through the gameplay area, the proximity connection rules will make the network m-regular, with each participant connected to the same number of other participants."  D.I. 464-1, Ex. A-1 (Medvidović Rpt.) at ¶ 173.  GTA does not visually display these data connections, which are invisible to players.  Thus, merely to ***illustrate*** this ***concept*** of the connections between players, Drs. Medvidović and Mitzenmacher included in their reports an annotated gameplay image and a corresponding schematic:



174.    The illustration above can also be represented by the figure below which includes
the other players (7 and 8) in the 4 v. 4 Deathmatch that are not shown in the illustration above:



*Id.* at ¶¶ 173-174.

Both of Acceleration Bay's experts explained in their reports that the image had been
modified.  *Id.* at ¶ 173 ("As ***illustrated*** in the ***modified image*** copied below…") (emphasis
added); D.I. 464-1, Ex. A-2 (10/10/17 Mitzenmacher Rpt.) at ¶ 129 (same).  Both experts also
clearly stated that the image was being used for illustrative purposes, not as evidence of
infringement, and that the demonstrative image was consistent with and based on evidence.  Dr.
Medvidović, for example, could not have been clearer.  He stated that the image was only for
purposes of "illustration" and explained that it was supported by the gameplay testing data
evidence that Acceleration Bay's testing expert, Mr. Conlin, collected:

> While the image above was ***created*** and copied ***for illustration purposes***, ***Mr.
> Conlin's testing confirmed that GTA uses proximity rules*** to limit the exchange
> of data through direct peer-to-peer connections based on the distance between the
> participants in the game, as he observed a sharp reduction in such exchanges once
> players are a certain distance apart, and an increase in such exchanges when the
> players are brought closer together.

*Id.,* Ex. A-1 (10/10/17 Medvidović Rpt.) at ¶ 175 (emphasis added); *see also id.*, Ex. A-2
(10/10/17 Mitzenmacher Rpt.) at ¶ 131 (same).

During their depositions, Drs. Medvidović and Mitzenmacher confirmed that they were
only using the image for illustrative purposes, that they were not relying on it as evidence of
infringement, and that their m-regular opinions were based on evidence, not the demonstrative

image.  For example, Dr. Mitzenmacher testified that the image was intended to illustrate the

concepts discussed in his report and not serve as evidence of actual gameplay conditions:

Q: How do you know those players were there?

A: Again, so I think maybe you're missing the point of the picture, and I think this is discussed in Paragraph 131. . . . this is meant to be an ***illustration*** of the four-by-four Deathmatch and how it works. . . . their location as shown in Figure 130 ***could be set up*** to have those locations simply by positioning the player.  ***To be clear,*** as stated in 131, ***the image is for illustration purposes***.

\* \* \*

Q: How do you know this is from a four-on-four Deathmatch?

A: This picture I think ***is for illustrative purposes***.  It's a screenshot we were using to do it.  I don't think the intention of this is to say I was playing a four-by-four Deathmatch and this is the setting that arose.  It's to say this is a setting that can arise . . . I did not personally observe this picture, but . . . in playing the game I have seen situations like this . . . ***this matches my understanding of how the game is played***.

*See* Frankel Decl., Ex. 1 (Mitzenmacher Tr.) at 55:21-66:22 (emphasis added).

Dr. Medvidović provided similar deposition testimony confirming that the image was to

illustrate what is happening at the non-visible system level, was not offered as evidence, and was

consistent with the evidence he was relying upon:

Q: You just don't know if it's from a four-on-four death match; right?

A: . . . [W]hat it shows is ***what would happen at the level of the system***, how these things ***would*** network with one another in a four-on-four death match.

\* \* \*

Q: So did this screen grab, did this influence – do you consider this ***evidence of infringement*** that you considered ***and relied on***? . . .

A: It clearly states in paragraph 173 [of my report] that this is ***just an example to illustrate the discussion.***  The evidence . . . stretches over to 2, 4, 6, 7, 10, 11 and a half pages of which this figure is about a quarter of one page.

Frankel Decl., Ex. 2 (Medvidović Tr.) at 133:11-136-8 (emphasis added).  Thus, both experts

confirmed that these demonstratives were not evidence and were only intended to illustrate the

4

network connections that occurred during gameplay sessions but were not visible to users of the game.  Indeed, experts use annotated images as demonstrative exhibits during trial all the time.

Even Take Two's counsel acknowledged the understanding that the image was only intended to illustrate concepts and was not offered as evidence of infringement during the experts' depositions.  For example, Take Two's counsel asked Dr. Medvidović, "[t]his is another illustration *as opposed to evidence of infringement*?"  *Id.* at 136:5-8 (emphasis added).  Dr. Medvidović confirmed that Take Two's understanding was correct: "[t]his is part of the *illustration* to explain the evidence of infringement."  *Id.* (emphasis added).  Take Two also acknowledged this to be the case during the deposition of Dr. Mitzenmacher: "so this is to *illustrate* your testimony *as opposed to evidence* that it actually happened."  Frankel Decl., Ex. 1 (Mitzenmacher Tr.) at 66:5-7 (emphasis added).  Take Two omitted this key context for this testimony in its Motion and accompanying exhibits.  Intentionally excerpting the line of questioning that omits Take Two's acknowledgement that the demonstrative was not offered as evidence of infringement speaks volumes about the lack of support Take Two has for its argument.

Drs. Medvidović and Mitzenmacher set forth in their reports the ***evidence*** they relied upon to conclude that GTA uses an m-regular network, which did not include the demonstrative illustration.  As stated in their reports, Drs. Medvidović and Mitzenmacher relied on the testing expert report of Mr. Conlin as evidence of the proximity-based data connections.  *See* D.I. 464-1, Ex. A-1 (10/10/17 Medvidović Rpt.) at ¶¶ 22, 104, 137; *id.*, Ex. A-5 (Medvidović Reply) at ¶¶ 28, 51, 117-121, 389; *id.*, Ex. A-2 (10/10/17 Mitzenmacher Rpt.) at ¶¶ 15, 115, 131, 252; *id.*, Ex. A-6 (Mitzenmacher Reply) at ¶¶ 43, 65, 211-212; D.I. 473-1, Ex. 2 (Conlin Rpt.) at ¶¶ 26-28.  In addition, Drs. Medvidović and Mitzenmacher cited to the source code and deposition testimony

evidence that they relied upon.  D.I. 464-1, Ex. A-1 (10/10/17 Medvidović Rpt.) at ¶¶ 163-181; *id.*, Ex. A-2 (10/10/17 Mitzenmacher Rpt.) at ¶¶ 121-137; *id.*, Ex. A-6 (Mitzenmacher Reply) at ¶¶ 34-66, 112-133; *id.*, Ex. A-5 (Medvidović Reply) at ¶¶ 33-54, 152-166.  **Nowhere** in their reports (or anywhere else in the record), did Drs. Medvidović and Mitzenmacher purport to rely on the annotated gameplay image as evidence.[1]

In view of the above, Take Two had no basis whatsoever to accuse Acceleration Bay of relying on "falsified evidence," "falsified screenshots," "phony evidence," and a "doctored screenshot."  Motion at 1-2, 4-7.  Such accusations of significant misconduct by party opponents should be sparingly employed by counsel and not in instances where counsel knows the opposite to be true.  Trumping up evidence of misconduct underscores the substantive weakness of Take Two's Motion.  Likewise, Take Two is plainly incorrect to claim that Acceleration Bay's "only evidence that the accused network was ever m-regular was a screenshot Acceleration [Bay] found on YouTube, ***doctored*** to fit its infringement theory," a claim that ignores the pages of actual evidence that Acceleration Bay's experts actually relied upon.[2]  Motion at 1 (emphasis added).

---

[1] In opposing summary judgment, Acceleration Bay long ago explained to Take Two that it was not offering the image as evidence.  D.I. 472 (Opposition to Def. MSJ) at 5, n.3 ("Take-Two fails to credit the statements in both experts' reports that the image was (1) 'modified' to illustrate the connections between the players, (2) 'was created and copied for illustration purposes,' and (3) is consistent with the experimental data observed by Mr. Conlin. . . . Take-Two ignores the point of the image; to illustrate the concept of the application of the proximity rules between players.  It would not have been possible to use an actual, unmodified game screen capture to illustrate this point because the overlay network connections between players are not depicted by the game.") (citation omitted).

[2] For this reason, Take Two's authorities finding cases exceptional when the plaintiff relied on falsified evidence do not apply.  *See, e.g., Aptix Corp. v. Quickturn Design Sys*, 269 F.3d 1369, 1374-75 (Fed. Cir. 2001) (finding a case exceptional due to falsified evidence).

The Court was troubled in the *Activision* case when Activision (represented by Take Two's counsel) filed an unsuccessful Rule 11 motion accusing Acceleration Bay of lying:

> When I read [Activision's Rule 11] briefs, one of the things that troubled me was ***Defendant's assertions that appeared to be an allegation that lead counsel had lied***. . . . Although the nature of the briefing as a whole made me dubious of the merits of Defendant's motion, ***my attention was caught by the prospect of a lying lawyer***.

*Acceleration Bay v. Activision Blizzard, Inc*., No. 16-cv-00453-RGA ("*Activision*"), D.I. 192 at 2, n.2 (D. Del. June 23, 2017) (citations omitted) (emphasis added).

The Court explained that there was no basis in the record to accuse Acceleration Bay's counsel of lying:

> Defendant's accusation was that lead counsel declared, "Acceleration Bay's counsel carefully evaluated and relied upon the additional evidence of Activision's infringement discussed above." Describing an event occurring at a later time, however, "Acceleration [Bay's] counsel represented that *[lead counsel] had not reviewed the source code produced by Activision* or consulted with those who had." . . . The suggestion being, that lead counsel had told two opposite stories, at least one of which was under oath. Not so. . . . The portion Defendant cites only supports the italicized portion of the allegation. Nothing is cited in support of the rest of the sentence. There does not seem to me to be any necessary reason for lead counsel to personally review source code. ***There is no necessary conflict between the two statements.***

*Id.* (citations omitted) (emphasis added).

Because the record did not support a conclusion that Acceleration Bay's counsel had lied, the Court concluded that, "***Defendant's aspersions seem to exceed the bounds of legitimate advocacy***." *Id.* (emphasis added). Take Two repeats that mistake here. Take Two's argument that Acceleration Bay relied upon falsified evidence is itself false, fails to establish that this case was exceptional, and warrants denial of Take Two's motion.

### B.    Acceleration Bay Provided a Detailed Infringement Analysis

Acceleration Bay provided a detailed infringement case, backed by thorough and substantive technical reports that set forth in detail the evidence establishing Take Two's

infringement.  That the Court ultimately granted summary judgment of non-infringement does not render the case exceptional.  *EON Corp. IP Holdings, LLC v. Flo TV Inc.*, No. 10-812-RGA, 2014 WL 2196418, at *2 (D. Del. May. 27, 2014) (denying motion for fees under § 285 after granting summary judgment in favor of defendant because "[t]he substantive strength of [Plaintiff's] case was not so conspicuously deficient as to justify the award of attorney's fees.").

To the contrary, fees are only awarded to a prevailing party where the case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. 07-127-LPS-MPT, 2015 WL 4455606, at *3 (D. Del. July 21, 2015), *report and recommendation adopted,* No. CV 07-127-LPS, 2015 WL 5768385 (D. Del. Sept. 30, 2015) (citation omitted). Only if the case is exceptional, should the Court proceed to "an evaluation of 'whether an award of attorneys' fees to the prevailing party is justified.'"  *Id.*  There is nothing exceptional here about the strength of Acceleration Bay's case and no justification to award fees.

As to the strength of the infringement case against GTA, Take Two primarily relies on its meritless claim that Acceleration Bay relied on falsified evidence, debunked above.  Take Two also argues that Acceleration Bay's analysis of the m-regular limitation was unsupported. *See* Motion at 5-6.  To the contrary, Acceleration Bay's technical experts discussed at length in their reports how GTA satisfies the m-regular requirement and the evidence supporting their opinions, including the deposition testimony of multiple Take Two engineers who worked on GTA, over a dozen specific source code modules, and gameplay test data, which Take Two simply ignores in its Motion.  D.I. 464-1, Ex. A-1 (10/10/17 Medvidović Rpt.) at ¶¶ 163-181; *id.*,

Ex. A-2 (10/10/17 Mitzenmacher Rpt.) at ¶¶ 121-137; *id.*, Ex. A-6 (Mitzenmacher Reply) at

¶¶ 34-66, 112-133; *id.*, Ex. A-5 (Medvidović Reply) at ¶¶ 33-54, 152-166.

Acceleration Bay summarized how GTA satisfies the m-regular element in its Opposition

to Take Two's motion for summary judgment of non-infringement:

> GTA uses m-regular, incomplete networks to distribute gameplay data to
> participants in a gameplay session. . . . The gameplay data are broadcast using peer-
> to-peer connections. . . . Because not all players can directly connect, and to avoid
> overloading individual participants, the network includes peer relays to broadcast
> messages, making the network incomplete, as Take-Two's non-infringement expert
> concedes.

D.I. 472 at 2 (citations omitted).  Acceleration Bay further summarized how GTA makes the

network m-regular:

> During live gameplay sessions, GTA becomes an m-regular, incomplete network
> due to the application of various rules that limit and balance the number of direct
> connections between the participants. . . . GTA gameplay sessions are programmed
> to have a maximum number of participants and GTA is programmed to add new
> players to sessions to fill them to the maximum number of participants, while
> distributing the relaying load (load balancing) between the different relays, causing
> the network to converge to the same number of connections for each participant.  []
> GTA then uses proximity rules to limit the direct exchange of data to participants
> near each other in the gameplay session, yielding a regular network.

*Id.* at 3 (citations omitted).

In their reports, Acceleration Bay's experts provided diagrams of the m-regular network,

identified the specific source code that provides this functionality, identified specific supporting

testimony from Take Two's engineers, and verified their analysis with actual gameplay test data

demonstrating the limitation in data flow due to proximity.  *See id.* at 3-5 (summarizing evidence

and citing to expert reports).

In granting summary judgment of non-infringement, the Court concluded that the

"proximity connection rules" do not render the network m-regular because "the players' actions

determine how connections are formed," and even if "the infringing state 'just arises naturally

[as] . . . the players are moving throughout the game,'" as Acceleration Bay's experts opined, that would be insufficient because the result had not been "designed." D.I. 492 at 15 (citation omitted). While Acceleration Bay respectfully disagreed with the Court's conclusion, it did not challenge this ruling on appeal given that it was highly factual in nature. After receiving extensive briefing and holding a lengthy hearing on summary judgment, the Court did not make any findings that Acceleration Bay's position was frivolous or weak. Nor would there have been any basis to do so given the extensive evidence that Acceleration Bay relied upon. There is also no reason for the Court to do so now.

The same is the case for NBA 2K, which Take Two only briefly addresses in its Motion. Motion at 8-9. Acceleration Bay relied on literal infringement based on the Park Relay Server being part of the underlying network layer and not a participant in the application layer and, in the alternative, a theory of infringement under the doctrine of equivalents. *See* D.I. 472 (Opposition to Def. MSJ) at 7-11 (citing to evidence). As with GTA, Acceleration Bay's experts provided a detailed analysis in support of their opinions, including reference to specific source code and deposition citations. *See, e.g.,* D.I. 464-1, Ex. A-1 (10/10/17 Medvidović Rpt.) at ¶¶ 182-194; *id.*, Ex. A-2 (10/10/17 Mitzenmacher Rpt.) at ¶¶ 138-173; *id.*, Ex. A-6 (Mitzenmacher Reply) at ¶¶ 67-89, 134-142; *id.*, Ex. A-5 (Medvidović Reply) at ¶¶ 55-75, 167-181.

Take Two claims without citation that "Acceleration [Bay]'s expert candidly admitted that the accused [NBA 2K] client-server network was not infringing." Motion at 1. This is plainly incorrect. Dr. Mitzenmacher and Dr. Medvidović both opined that NBA 2K infringed the asserted claims and satisfied all elements, including the m-regular requirement. If Take Two is referring to Dr. Mitzenmacher's statement during his deposition that NBA 2K uses an m-regular

network, at least under the doctrine of equivalents, that is still an opinion that NBA 2K infringes under the doctrine of equivalents.  Frankel Decl., Ex. 1 (Mitzenmacher Tr.) at 167:8-13 ("that particular configuration is discussed as a DOE equivalent.").  Neither expert ever "admitted" that NBA 2K "was not infringing," as Take Two claims.

The Court ultimately disagreed with Acceleration Bay as to GTA and NBA 2K being m-regular, but that does not make the case exceptional, i.e., "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness,* 572 U.S. at 554.  Given the complex nature of the accused products, the bona fide disputes between the parties' technical experts, and the substantial evidence that Acceleration Bay's experts relied upon, the merits of Acceleration Bay's infringement case were reasonable, and certainly not exceptional, and there is no basis to award fees.  *Indivior Inc. v. Dr. Reddy's Labs. S.A.*, No. 14-cv-1451-RGA, 2020 WL 1955433, at *3 (D. Del. Apr. 23, 2020) (denying motion for fees where "the evidence to which Defendants point does not show that Plaintiffs' litigating position was one of exceptional weakness [or] . . . brought in bad faith.").

### C.    Acceleration Bay's Positions Were Reasonable

Take Two's further grounds fail to establish that Acceleration Bay's positions throughout the case were unreasonable, let alone "exceptionally weak."

Take Two argues that the invalidation of a handful of Acceleration Bay's claims makes this case exceptional, but the validity case confirms the ***strength*** and ***reasonableness*** of Acceleration Bay's case.  Take Two challenged the validity of every asserted claim on myriad grounds, including a challenge to patent eligibility under 35 U.S.C. § 101, at least twenty challenges to definiteness, written description, and enablement, as well as claims of anticipation

and obviousness based on over a dozen alleged prior art references.  Almost all of these challenges were unsuccessful.

For example, the Court rejected Take Two's challenge to patent eligibility under 35 U.S.C. §101.  *See* D.I. 245 at 5-9.  In doing do, the Court found that the challenged claims "are directed to an innovative network structure for the distribution of data as the number of participants in a computer network is scaled."  *Id.* at 6.

Take Two (along with defendants and a related third party from the related cases) filed *twenty* petitions for IPR against Acceleration Bay's patents.  The USPTO denied institution or found all claims patentable in thirteen of the IPRs, a remarkable result, given the PTAB's high rate of invalidation, and confirmed the validity of all of the claims in Acceleration Bay's final election of asserted claims.  *See* D.I. 363.  Acceleration Bay's success in defending the validity of its claims in IPRs further underscores that its positions in this case, including on validity, were reasonable.

Presumably recognizing that its anticipation and obviousness arguments were no longer tenable following the IPRs, Activision, which jointly presented invalidity with Take Two, decided to not even put on a prior art-based invalidity defense at trial and limited its invalidity case to an alleged lack of written description.[3]  *Activision*, D.I. 590 (Joint Pretrial Order) at ¶ 3 (D. Del. Oct. 16, 2018).  The Court also rejected Take Two's definiteness challenges to Claims 1, 13, 14, 16, and 18 of the '344 Patent, Claims 1 and 13 of the '966 Patent, and Claim 1 of the '069 Patent.  *See, e.g.*, D.I. 256, D.I. 379, D.I. 370, D.I. 244.

---

[3] The trial in *Activision* was ultimately postponed for the Court to further consider damages issues in the case.  *See Activision,* D.I. 619 (Case Management Order) at 2-3 (D. Del. Oct. 30, 2018).

In view of Acceleration Bay's overwhelming success in defending the validity of its claims, the Court's finding that two claims were invalid because they contain the phrase "computer readable media," hardly renders the case exceptional. The issue impacted only a few of the asserted claims, and represented a small portion of the at least 40 total terms addressed during the claim construction process.

Finally, the exclusion of portions of Acceleration Bay's damages case does not render the case exceptional. Early in the refiled case, the Court granted Take Two's motion to dismiss for lack of standing as to games on the Sony platform. *See* D.I. 237. The decision turned on an implication of Sony's ability to grant sublicenses, and the Court noted Acceleration Bay's argument in support of standing and never found that its positions lacked merit. *Id.* at 3-5.[4]

As to the exclusion of Acceleration Bay's damages expert, there was no motion practice regarding Acceleration Bay's damages case in *Take Two*. Instead, Take Two refers to motion practice in the *Activision* case. Acceleration Bay stipulated that the results from *Activision* would control in *Take Two*, thereby reducing the burden on the Court and conserving party resources. D.I. 447 at 2-3. The fate of Acceleration Bay's damages case in *Activision* has not yet been determined, as the parties' motions on damages are pending before the Court, and the Court may conclude that Acceleration Bay can proceed with its damages case in *Activision*. *See, e.g., Activision,* D.I. 728 (Joint Status Report) (D. Del. Nov. 1, 2021). Even if the Court ultimately excludes Acceleration Bay's damages case in *Activision*, that is not uncommon in

---

[4] Take Two contended that it had an actual license from Sony to use Acceleration Bay's patents, yet never produced a license referencing Acceleration Bay's patents, which could have obviated the need for any motion practice. D.I. 237 at 3, n.3 ("As a side note, Defendants assert they have actual licenses [] and have produced them. . . . Plaintiff disputes that any actual licenses have been produced. . . . It disappoints me that the parties cannot agree on whether licenses have or have not actually been produced.") (citations omitted).

patent litigation.  Indeed, Take Two does not cite any cases, nor is Acceleration Bay aware of any cases, that find the exclusion of a damages expert or limitation of damages renders a case exceptional under § 285.  Moreover, the Court only excluded a portion of the damages opinions. *See, e.g.,* D.I. 492 (Opinion re: MSJ), D.I. 455 (Case Management Order), D.I. 448 (Order re: Damages Issues).

Thus, considering the "totality of the circumstances," Acceleration Bay's case was reasonable, and Take Two fails to establish that this case was "exceptional[ly] weak[]."  *Indivior Inc.*, 2020 WL 1955433, at *1-3.

### D. Alleged Actions in Other Cases Do Not Make Acceleration Bay's Litigation Conduct in This Case Exceptional

Take Two contends that Acceleration Bay's litigation conduct render this case exceptional, but Take Two says almost nothing about how this case was litigated.  Instead, Take Two primarily relies on other cases, which have no relevance to the question of whether ***this*** case was exceptional.  Specifically, Take Two presents no authority that admonishment by other courts of some of the counsel representing Acceleration Bay has any bearing on ***this*** case.  *See* Motion at 14-15.  Take Two also relies on a finding the Court reached in the *Activision* case in deciding a discovery dispute which, again, has no bearing on how Acceleration Bay litigated this case.  *Id.* at 13 (citing *Activision*, D.I. 422).

Outside of the attack on counsel, Take Two's only purported evidence of improper litigation conduct is to briefly list four unsuccessful positions that Acceleration Bay took:

(1)    Acceleration Bay disputed that its computer-readable medium claims were invalid.  *However, as discussed above in Section I(C), this was a reasonable position and Acceleration Bay overwhelmingly prevailed on issues of validity*;

(2)    Acceleration Bay moved to correct a single claim that the Court found to be indefinite because, as drafted, it was "nonsensical."  D.I. 440 at 8.  *In fact, the Court ultimately denied the motion on the grounds that "Plaintiff's arguments*

14

*demonstrate that the correction is itself subject to a reasonable debate." Id.* at 9 (citation omitted).

(3)     Acceleration Bay preserved its argument regarding making/using/and selling after the Court found against Acceleration Bay in *Activision* and *EA*.  D.I. 472 at 19, n.6 ("Acceleration Bay also seeks to preserve its argument, advanced in *Activision* and *EA*, that Take-Two further infringes these claims under 35 U.S.C. § 271(a)").  *In doing so, Acceleration Bay respectfully acknowledged the Court's prior decisions, noted that the arguments in Take Two were parallel, highlighted differences in the facts between the cases, and relied on an intervening Federal Circuit decision that came after the* Activision *decision.  See id.* at 11-21; *see also* D.I. 490 (2/4/20 Hearing Tr.) at 34:20-36:22 (discussing intervening *Centrak* decision); and

(4)     Objecting to five Special Master discovery orders.  *Acceleration Bay succeeded in having the Court modify one of those orders*.  D.I. 254 (modifying Special Master Order).

*See* Motion at 13-14.

None of these stand out from ordinary actions that take place every day in patent cases. Nor do they show that Acceleration Bay, under the totality of the circumstances litigated "unreasonably."  To the contrary, it repeatedly took steps to streamline this case and minimize redundant litigation.  For example, Acceleration Bay cooperated with Take Two on numerous occasions to provide extensions of time requested by Take Two or to use streamlined case management procedures to minimize the burden on the Court and the parties.  D.I. 278, 318, 343, 375, 383, 409, 428, 446, 449, 458, 470, 515, 517, 519, 522 (extensions and modifications to schedule); D.I. 18, 180, 283, 447, 451, 484, 496 (case management and narrowing stipulations). Acceleration Bay does not suggest that there is anything remarkable about the parties cooperating to do so.  Rather, these stipulations reflect Acceleration Bay's efforts to efficiently resolve this dispute and that this case was not litigated in a vexatious manner.  Accordingly, Acceleration Bay's litigation conduct does not warrant imposition of fees under § 285.

## II.     There is No Basis to Award Fees Against Acceleration Bay's Principal

No fees should be awarded under 35 U.S.C. § 285 because this is not an exceptional case. Moreover, there is no basis to pierce the corporate veil and assess fees against Acceleration Bay's principal, Joseph Ward, in his personal capacity.  Take Two took an extensive deposition of Mr. Ward and discovery into Acceleration Bay's finances, yet offers no evidence that Mr. Ward is the alter ego of Acceleration Bay, such that the corporate veil could be pierced, which would require proof that "the corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud."  *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) (denying request to pierce the corporate veil, which is a "difficult standard") (citation omitted).

Take Two does not even attempt to carry its heavy burden to show that Acceleration Bay's corporate form was misused in a way "akin to fraud."  *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*, No. 16-581-RGA-MPT, 2017 WL 896988, at *5 (D. Del. Mar. 7, 2017) (citation omitted). Courts look to a combination of eight factors with an "an overall element of injustice or unfairness" to determine if veil-piercing is appropriate,  including "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a façade for the operations of the dominant stockholder."  *Id.* (citations omitted).  Take Two does not address any of these factors.  Thus, its request to pierce the veil should be denied.

## III.    Fees Under 35 U.S.C. § 285 Are Not Available Against Counsel

Take Two's request that fees be assessed against Acceleration Bay's counsel should likewise be denied.  First and foremost, this case is not exceptional.  Moreover, as Take Two

acknowledges, this Court recently confirmed that 35 U.S.C. § 285 does not authorize imposition of fees against counsel. *See Dragon Intell. Prop., LLC v. Dish Network L.L.C.,* No. 1:13-cv-02067-RGA, 2021 WL 5177680, at *3-5 (D. Del. Nov. 8, 2021) (adopting and overruling objection to finding of Magistrate Judge that fees may not be assessed under § 285 against counsel).

As this Court explained, neither the statute nor Supreme Court precedent authorize imposition of exceptional case fees on counsel, leaving "no basis" to do so here:

> I see nothing in *Octane Fitness* that authorizes attorney liability for a fee award. Instead, federal courts generally presume that "when a fee-shifting statute does not explicitly permit a fee award against counsel, it prohibits it. In short, silence does not equal consent." *In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009). *Section 285 does not explicitly permit a fee award against counsel*. In the absence of such explicit permission, the Magistrate Judge properly decided that *there was no basis to impose fee liability against the attorneys*.

*Id.* at *4-5 (emphasis added). The Court summarized the cases finding that fee-shifting statutes that are silent on the issue do not permit fees to be assessed against counsel. *Id.* (collecting cases). In declining to impose fees on counsel in an exceptional case, the Court noted two Federal Circuit decisions and a series of district court cases coming to the same conclusion:

> The Federal Circuit held in two non-precedential opinions that *§ 285 does not permit a fee award against counsel*. *Phonometrics, Inc. v. ITT Sheraton Corp*., 64 F. App'x 219, 222 (Fed. Cir. 2003) ("Counsel . . . is not liable for fees awarded under § 285; it can only be liable for excess fees awarded under§ 1927."); *InterlinkElecs. v. Incontrol Sols., Inc.*, 1999 WL 641230, at *3 (Fed. Cir. Aug. 24, 1999) (per curiam) ("[S]ection 285 imposes costs on a party, not an attorney."). . . . Many post-*Octane* district court cases have also reached the same conclusion. *See, e.g., My Health, Inc. v. ALR Techs., Inc.*, 2019 WL 2395409, at *3 (E.D. Tex. June 5, 2019) ("Defendants provide no legal basis for a fee award against [opposing party's] counsel under § 285. Indeed, the Federal Circuit has declined to find counsel liable for fees awarded under § 285."), *adopted*, 2020 WL 122933 (E.D. Tex. Jan. 10, 2020); *Advanced Video Techs. LLC v. HTC Corp*., 2015 WL 7621483, at *5 (S.D.N.Y Aug. 28, 2015) ("Unlike other types of sanctions, sanctions under § 285 may not be assessed against counsel – only against a party.").

*Id.* at *5 (emphasis added).

Take Two "respectfully suggests that *Dragon* was incorrectly decided," but identifies no error in the Court's decision.  Motion at 17.  Take Two asks the Court to disregard its own precedent and instead follow a case from the Eastern District of Texas, *Iris Connex LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 863 (E.D. Tex. 2017), that found fees could be assessed against counsel.  *Id.* at 17-18.  However, as discussed above, that single outlier case goes against this Court's precedent, the two Federal Circuit decisions to have addressed this issue (cited by this Court in *Dragon*), subsequent cases in the Eastern District of Texas (such as *MyHealth*, also cited by the Court in *Dragon*), and the other district court cases to have considered the issue.  Moreover, *Iris Connex* turned on egregious facts not present here where the court found that "[counsel] was the dominant cause making this case exceptional . . . . [f]rom start to finish . . . Every reason for this Court's exceptional case finding emanates from [counsel]."  *Iris Connex*, 235 F. Supp. 3d at 852.  That is not the case here.

Take Two urges that assessing fees against counsel is supposedly consistent with congressional intent—even though congress excluded counsel from § 285 and the Court came to a contrary conclusion in *Dragon*:

> The Magistrate Judge found, and Defendants agree, that nothing in the legislative history of § 285 supports awarding fees against opposing counsel. . . . She instead found that since the fee-shifting provision was included in the same section enumerating the remedies in patent infringement cases, and when remedies are awarded in patent infringement cases, it is the party (not its attorney) that must pay damages or stop its infringing activities, "Congress intended the losing party (and not its attorney) to pay attorney's fees." . . . Section 285 and its predecessor's placement was supportive of the Magistrate Judge's finding that ***there was no congressional intent to overcome the presumption and to permit a fee award against a party's counsel***.

*Dragon*, 2021 WL 5177680, at *5, n.6 (emphasis added) (citations omitted).

Take Two also suggests that Acceleration Bay's counsel should be liable as its alter egos, but offers no legal authority to support holding counsel liable as the alter egos of their clients and

no evidence that could support such a finding. Instead, Take Two simply notes that Acceleration

Bay's counsel helped with incorporation, evaluation of intellectual property assets, and

negotiation of litigation funding. Take Two does not identify any authority finding that the

provision of such routine legal services imposes alter ego liability. Accordingly, Take Two's

request for fees from Acceleration Bay's counsel should be denied.

## IV.   Acceleration Bay Did Not Multiply These Proceedings

There is no basis to impose sanctions on Acceleration Bay or its counsel under 28 U.S.C.

§ 1927, which is an exacting standard and higher than the one under Section 285. *Dragon Intell.*

*Prop., LLC v. DISH Network, LLC*, No. 1:13-cv-02066-RGA, 2018 WL 5818533, at *2 (D. Del.

Nov. 7, 2018), *vacated and remanded*, 956 F.3d 1358 (Fed. Cir. 2020) ("Thus, although

Defendants identify behavior that I might properly have sanctioned under Section 285, the

allegations do not meet the standard for a Section 1927 fees award."). The Third Circuit limits

Section 1927 fees awards to instances where the party or attorney has "(1) multiplied

proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the

proceedings; (4) with bad faith or with intentional misconduct." *LaSalle Nat. Bank v. First*

*Conn. Holding Grp., LLC.*, 287 F.3d 279, 288 (3d Cir. 2002) (citation omitted). "[C]ourts should

exercise [this sanctioning power] only in instances of a serious and studied disregard for the

orderly process of justice." *Id.* (citation omitted). For the reasons set forth above, there is

nothing exceptional about this case, let alone conduct rising to the level of vexatious litigation.

That Take Two ultimately prevailed in the case is not a basis to award sanctions under

§1927. Conduct to be sanctioned must be of an "egregious nature, stamped by bad faith," and

not because of "misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone*

*Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir 2009) (quotation omitted) (citations omitted).

"[B]ad faith is a necessary predicate for a violation of section 1927 in order to 'avoid chilling an

attorney's legitimate ethical obligation to represent his client zealously.'" *Hackman v. Valley Fair*, 932 F.2d 239, 243 (3d Cir. 1991) (quoting *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985)).  Unsuccessful (and even weak claims and arguments) are not the same as frivolous claims or arguments.  *Morgan v. Covington Twp.*, 563 F. App'x 896, 904 (3d Cir. 2014).  As discussed above, Acceleration Bay's positions were far from frivolous.

Here, Take Two does not identify a bad faith motive or purpose for Acceleration Bay's pursuit of its claims against Take Two.  As evidenced by its detailed and well-reasoned submissions and expert reports, Acceleration Bay filed this action intending and expecting that it would prevail on the merits.  Take Two does not even attempt to allege an improper purpose, such as to harass Take Two or multiply these proceedings (which Acceleration Bay would have no reason to do) or to extract a nuisance value settlement (which Acceleration Bay never requested).  To the contrary, as noted in Section III(D), Acceleration Bay cooperated with Take Two on numerous occasions to provide extensions of time requested by Take Two or to use streamlined case management procedures to minimize the burden on the Court and the parties.  In sum, there is no reason for the Court to find that Acceleration Bay or its counsel brought or maintained this action with vexatious intent.[5]

For all of these reasons, Take Two's alternative request for sanctions under § 1927 should be denied.

## CONCLUSION

As set forth above, the Court should deny Take-Two's motion.

---

[5] Take Two's repeated references to alleged conduct by Acceleration Bay's counsel in other cases has no bearing on the § 1927 analysis.  *See Dashner v. Riedy*, 197 F. App'x 127, 133 (3d Cir. 2006) ("We express no opinion on the reference to counsel's conduct in other litigation, but we have held that sanctions under § 1927 must only impose costs and expenses that result from the particular misconduct in the litigation at issue.") (citation omitted).

OF COUNSEL:                                     POTTER ANDERSON & CORROON LLP

Paul J. Andre                                   By:  /s/ Philip A. Rovner
Lisa Kobialka                                        Philip A. Rovner (#3215)
James Hannah                                         Jonathan A. Choa (#5319)
KRAMER LEVIN NAFTALIS                                Hercules Plaza
   & FRANKEL LLP                                     P.O. Box 951
990 Marsh Road                                       Wilmington, DE  19899
Menlo Park, CA 94025                                 (302) 984-6000
(650) 752-1700                                       provner@potteranderson.com
                                                     jchoa@potteranderson.com
Aaron M. Frankel
Marcus A. Colucci                                    *Attorneys for Plaintiff*
KRAMER LEVIN NAFTALIS                                *Acceleration Bay LLC*
   & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated:  March 10, 2022
Public version dated: March 17, 2022
10070108